## SUPREME COURT.

HENRY A. SMYTHE and others agt. WILLIAM GRAYDON and others.

The terms and provisions of a *composition deed* must be strictly complied with by a debtor, to be a bar to an action by the creditor for his whole debt.  It is not enough that it is shown that the creditor may eventually receive from the debtor's property the full amount of his composition claim, if it is to be procured by a violation of the terms of the composition.

*New York General Term, February*, 1865.   *Action No.* 1.
*Before* INGRAHAM, *P. J.*, CLERKE *and* SUTHERLAND, *Justices*.

ACTION to recover five promissory notes amounting to $4,582.47, made by the defendants, composing the firm of Graydon, McCreery & Co.   On March 7, 1861, the plaintiffs, holding the notes in suit, made a composition with the defendants and others of their creditors, by which they agreed to accept in full, fifty per centum of their notes, payable at an average of twelve months from April 1, 1861; they to deposit their notes with William Watt until the fifty per centum should be paid; and it was further provided that should Graydon, McCreery & Co. find it necessary to make an assignment, and by preference, or in other ways, so secure the payment of the fifty per centum, that it should eventually be paid, then without regard to the twelve months, such payment should be in full.

Graydon, McCreery & Co. were compelled to assign on May 7, 1861.   They preferred the plaintiffs for the fifty per centum, at an average of twelve months, from April 1, 1861, and the jury found that the assigned assets were

sufficient to pay it. The plaintiffs did not deposit their notes with William Watt before the expiration of the twelve months from April 1, 1861.

T. CRONIN, *counsel for plaintiffs.*

*First.* The composition deed set forth at folios 73 and 75 of the case is void.

1. The final condition in this instrument was the eventual payment of fifty per cent., without regard to the time limited in the first clause. Terms so wholly uncertain, vague and indefinite, make the instrument void. Composition deeds are to be construed strictly, but the utmost latitude of construction cannot sustain this as having the elements of a valid contract. (*Story's Eq. Jur.* § 378; *Dungan* agt. *Ireland,* 14 *N. Y.* 322; *Chitty on Contracts, p.* 71; *Figes* agt. *Cutler,* 3 *Stark. R.* 139.)

2. There is no certainty or mutuality in the deed, except the certain agreement in effect by the defendants not to pay the plaintiffs' debt justly due them. An entire want of mutuality exists. The plaintiffs promise to accept fifty per cent. in satisfaction of their debt, but the defendants do not promise to pay it, or any other sum. Eventual payment is equivalent to repudiation.

*Second.* The deed is void for want of consideration.

1. No payment has been made, and the first clause is therefore inoperative, and was not in question or enter into the case upon the trial. The notes claimed to have been tendered, were not paid as they became due, and whether accepted or not, could not change the relation of the parties. This clause provides for an absolute payment of fifty per cent. at certain times, and not for the execution of certain notes in payment. The plaintiffs' debt being due at the time of the execution of the deed, the extension of the time to eventual payment, contained in the last clause, was void for want of a new consideration. Nothing was

agreed upon beneficial to the plaintiffs, or onerous to the defendants. The consideration to which plaintiffs are entitled is a benefit, to which they were not entitled except as a consideration of their agreement to compromise, or the injury must be to the legal rights, not to the wrongful claims of the defendants. (*Pabodie* agt. *King*, 12 *John.* 426 ; 19 *Id.* 389 ; *Cumber* agt. *Ware*, 1 *Strange R.* 426; *Harrison* agt. *Wilcox*, 2 *John.* 448 ; 17 *Id.* 169.) By force of this reasoning, and upon the authorities cited, plaintiffs' motion should have been granted.

*Third.* The court erred in denying the plaintiffs' motion made at folio 35 of the case.

1. There was no evidence, not any that defendants prior preferences were confidential, or that the payment of said fifty per cent. was secured by preferences in the assignment, or property or collaterals turned out to plaintiffs to secure them. Nor is there any real attempt to show it. The opinion of witnesses is alone produced, and they doubtfully advanced. When eventual payment will be received could not be fixed by the most eager of defendants' witnesses. He would not swear that it could be accomplished in ten years. The composition deed formed no reasonable satisfaction of the debt, and the evidence that the fifty per cent. would be paid, was neither full, explicit, or satisfactory (*Cumber* agt. *Ware*, 1 *Strange R.* 426). The deed being one of compromise, the terms of it must be shown by the defendants as of certain performance. It is for their sole benefit, and they must show clearly and affirmatively that it is beneficial to the plaintiffs, and that they have in every particular complied with its provisions (*Costigan* agt. *The Mohawk & H. RR. Co.* 2 *Denio*, 609).

2. The defendants offered no evidence to show that they had preferred the plaintiffs in the assignment for fifty per cent., nor is it true that they did so prefer in compliance with one of the conditions of the deed. The amount due the plaintiffs at the date of the assignment, May 7, 1861,

was $8,595.11, and the amount for which they are preferred
in the assignment is but $4,246.73, or less than fifty per
cent., by the sum of $50.82.   Here it will be seen that the
very essential condition of the compromise was evaded,
and bad faith by the defendants could not more clearly
appear.   It is said that figures wont lie.   These figures do
not, for they are placed right.   With the rules of very
strict construction applicable to this instrument, and the
strong desire that the courts should have to disregard it
upon legal principles, and destroy its unwarrantable use
by defendants as a shield to protect them from the pay-
ment of their just debts, it must be held that the attempted
fraud by virtue of its provisions shall fail.   It is so full of
equivocal terms and promises, so worded as to pay and
never to pay, so designedly intended to defraud the plain-
tiffs out of the large sum of $8,595, that every requirement
of it must be in letter and spirit complied with (*Story's
Eq. Juris.* 378, *cited ante*).

*Fourth.* The exclusion of the plaintiffs' offer at folio 42
of the case was error.

1. The deed provides for securing the payment of fifty
per cent. by a preference in the assignment after confiden-
tial debts, thus enhancing the chances of payment to plain-
tiffs, by limiting the debts of the first class to confidential
ones.   Plaintiffs offered to show that $50,000 of the debts
preferred in the assignment as confidential, were not so in
fact, and this offer is excluded.   It is submitted that this
is clearly error.   One of the provisions is that the defend-
ants may turn out property or collaterals to secure the
same, but they did not do so, nor did they show any facts
warranting eventual payment.   Hence, to secure the plain-
tiffs by preference in the assignment after confidential debts,
was a condition precedent for defendants to show before
they could avail themselves of a deed made solely for their
benefit.   Here the plaintiffs in good faith offer to show
these prior preferred debts as not confidential, and are not

permitted to do so. But the error is even more flagrant, as one of the defendants is allowed to testify that the preferences in the first class were all confidential, but the plaintiffs are denied the right to contradict it.

*Fifth.* The refusal to charge the jury as requested at folio 50, was error.

1. When the debts mentioned in the second class would be paid, was left by the court to the most wild and idle conjecture of witnesses. Opinions solely formed the basis of this sham defence. A very large share of the assets required to pay the two first classes, consisted of debts in the seceded states, and unless they were of five per cent. in value, no sufficient sum could be realized to pay the plaintiffs. Witnesses were allowed against plaintiffs' objections, to guess, to opinionize, to estimate, and to become prophets, to predict the close of our present national troubles, when the union would be restored, and how long southern debts would be good at five per cent. before the statute of limitations would run. The opinions of witnesses was improper evidence to be received and allowed to go to the jury, and form the sole basis for their verdict. For an error so vitally affecting the rights of the plaintiffs, a new trial should be granted. Facts alone should form the basis upon which a jury should act in so peculiar a case as this (*Morehouse* agt. *Matthews*, 2 *Comst.* 514). The plaintiffs were not so successful in introducing the opinions of witnesses as the defendants, as will be seen by examining folio 39 of the case. Subjects puzzling the wisest statesmen and warriors, and quite beyond the judgment of historians, are reduced to opinions and submitted to a jury, for the purpose of determining that possibly the plaintiffs may realize a part of their just debt. No matter what the effect upon them may be, a debt due them has been extended in time of payment to forever, because "it is nominated in the bond." Should it come within a century, their heirs may receive it as an unexpected inher-

itance. During the extension, the statute of limitations is running upon and barring the notes, and when six years have rolled around we shall be told by defendants that our notes are worthless, as we agreed to accept payment eventually—that the statute has barred a recovery, and that the verdict in this action also bars us. If the effect of eventual payment is to allow the statute to run, then the jury should have been instructed to find for the plaintiffs. (*Howes* agt. *Woodruff*, 21 *Wend.* 640). The plaintiffs discover their signature to a composition deed artfully prepared by defendants to defraud them. It was ostensibly presented to them to compromise an honest business indebtedness, and out of charity to the defendants, the plaintiffs accepted fifty per cent. to be paid. The plaintiffs composed a firm standing high in the esteem of the business community for their generosity, as well as commercial integrity and honor, and unsuspectingly signed an instrument fraudulently intended by defendants to operate as a delusion and a snare. There is no possible way or time when these notes or the fifty per cent. can be collected, or even judgment obtained for either, if this verdict is to be supported. There is a way to give the plaintiffs their legal rights, by declaring the instrument absolutely void, and granting to them a new trial for the law and reasons above stated.

MAN & PARSONS, *attorneys, and*
JOHN E. PARSONS, *counsel for defendants.*

*First.* The compromise gave the defendants to April 1, 1862, absolutely within which to pay the fifty per centum. If paid wholly by that date, or in part before and part after, or in any other way which would make the average time of payment within twelve months of April 1, 1861, the fifty per centum was to be in full. It was premature, therefore, for the plaintiffs to sue on February 24, 1862.

*Second.* The plaintiffs agreed to deposit their notes with

Smythe agt. Graydon.

Mr. Watt till the fifty per cent. should be paid. Mr. Watt was to hold for both parties. This they did not do, though defendants, who were under no obligations to do so, tendered to them new notes for the fifty per centum. The law will not permit plaintiffs to profit by the breach of their own agreement. Had they made this•deposit, to maintain this action, they would be compelled first to obtain their notes, which they could only do in a suit against Mr. Watt and the defendants, in which they would need at the least to establish the impossibility of eventual payment of the fifty per centum, *i. e.*, to show that the contingency never could arrive upon which Mr. Watt was to surrender to the defendants. If the plaintiffs having retained their notes in violation of their agreement, they may be permitted in this suit to show that they could have obtained them from Mr. Watt, and so justify their retention of, and so may sue upon them, the burden is still with them to show the impossibility of eventual payment. They have made no effort to do so.

*Third.* On the contrary, the defendants proved, and the question being left to them, the jury found that the plaintiffs would be eventually paid their fifty per centum. The assignment contained two schedules of preferences: " A," amounting to about $256,000, and " B," amounting to $174,738, the latter embracing the plaintiffs.

At the time of the trial, there remained unpaid

| | |
|---|---|
| of schedule " A " about | $50,000 |
| Of schedule " B " about | 112,000 |
| Together | $162,000 |

To pay which the assignees had on hand, cash $110,000
And other assets of the minimum value of $80,000 to 100,000
$210,000

Or much more than sufficient to pay plaintiffs.

*Fourth.* The plaintiffs made a point that the preference in schedule "B" to them was not next after the preference in the assignment of confidential debts, and so that the assignment did not comply with the compromise.

1. The compromise does not say next after confidential debts.

2. The judge correctly charged that the inquiry was—"whether the assets of the defendants that have been assigned are sufficient for the payment of the whole debts mentioned in the two first classes."

3. Confidential debts were proved on the plaintiffs' cross-examination to be such as the assignors make so ; and as matters of law, there is no such distinction in the character of debts.

*Fifth.* The judgment should be affirmed, with costs.

SUTHERLAND, J. The agreement or composition deed contained the provision "that if the said Graydon, McCreery & Co., shall find it necessary to make an assignment or other general disposition of their property, and shall secure the payment of the said fifty per cent. of our debts, either by *preference* in such *assignment* (after confidential debts), or by turning out property or collaterals to secure the same, and if by *such means* we shall eventually receive payment to the extent of said fifty per cent., then, and without regard to the time above limited, such payment shall be in full discharge of our respective debts."

Graydon, McCreery & Co., made an assignment or general disposition of their property for the benefit of their creditors. There was no proof by the defendants that the plaintiffs by that assignment were preferred after *confidential* debts; that the preferences prior to the plaintiffs were confidential. The plaintiffs offered to prove that $50,000 of debts which were not confidential, were preferred to the plaintiffs. This evidence was objected to and excluded, and plaintiffs excepted. The case was tried and the

jury charged on the theory, if there were sufficient assets in the hands of the assignee to eventually secure the payment of fifty per cent. of the debts of the compromising creditors, then there should be a verdict for the defendants.

This, I think, was a mistaken theory of the rights of the parties. The plaintiffs' notes were due, and they had a right to a judgment on them unless the composition deed was a bar; that they had complied with its terms or conditions. The provision of the deed before referred to, was, if Graydon, McCreery & Co. should find it necessary to make an assignment or other general disposition of their property, &c., or by turning out property or collaterals, &c., "and if by such means we shall eventually receive payment," &c. The question was not whether the plaintiffs might eventually, when the trust created by the assignment was closed, get their fifty per cent., but whether the fifty per cent. had been secured by the means or in the way specified in this provision of the composition deed. It is evident that the general assignment was not a turning out of property or collaterals within the meaning of the latter part of the alternative provision. The plaintiffs then, when they offered to prove that by the assignment $50,000 of debts not confidential were preferred before theirs, in effect offered to prove that neither part of the alternative provision had been complied with by Graydon, McCreery & Co.; that the plaintiffs could not by the means mentioned in the provision, eventually receive payment, &c. The plaintiffs were entitled to a strict construction of the composition instrument.

If these views are correct, it appears to me to follow that upon Graydon, McCreery & Co. making the assignment, the plaintiffs had a right forthwith to sue upon their notes, for by making the assignment they did, they put it out of their power to secure the payment of the fifty per cent., either at the average time of twelve months, or eventually, without regard to that limitation, by such means as were

specified in the composition agreement. Looking at the whole compromise agreement, I do not think it a fair construction of it to say that the plaintiffs agreed to take fifty per cent., or to wait the average time of twelve months after April, 1862, for the fifty per cent.,: if Graydon, McCreery & Co. made a general assignment for the benefit of their creditors, by which they preferred debts not confidential, to the debts of the composition creditors.

My conclusion is that the judgment should be reversed and a new trial ordered, with costs to abide the event of the action.